SYD NOVAK AND SYLVIA NOVAK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2308-66.  Filed October 2, 1968.

Syd Novak, pro se.
*Lewis M. Porter, Jr.,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' joint Federal income tax for the taxable year 1962 in the amount of $1,515.12. The issues for decision are: (1) Whether expenses for which petitioner-husband claimed a deduction of $5,784.44 were ordinary and necessary business expenses; and, if so, whether petitioners have substantiated this amount or any amount of business expenses, and (2) whether petitioner-husband is an outside salesman under section 62(2)(D) of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and exhibits thereto are incorporated herein by this reference.

Syd Novak and Sylvia Novak, husband and wife, were legal residents of Illinois when their petition was filed. Petitioners filed a joint Federal income tax return on the cash receipts and disbursements method for the calendar year 1962 with the district director of internal

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

revenue at Chicago, Ill. Sylvia Novak is petitioner herein solely by reason of having filed a joint return with her husband. Syd Novak will sometimes hereinafter be referred to as petitioner.

During the taxable year 1962, petitioner was employed by the brokerage firm of Sincere & Co. in Chicago, Ill., as a registered representative or salesman, sometimes referred to as a customers man. Petitioner's duties included the entering of orders through Sincere & Co. for the sale and purchase of stock and other securities for his customers. He was paid a commission on each sales transaction placed for a customer through his employer. Petitioner was required to be at his employer's place of business from 9 a.m. to 2:30 p.m. each day the stock exchanges were open. Only during these hours could petitioner enter purchases or sales for his customers. While at his Sincere & Co. office, petitioner not only entered orders which he had taken during the preceding afternoon and evening but also wrote up and transmitted orders for customers who came to his office. Also while at his stock-brokerage office, petitioner talked with and advised customers on investments. In addition, petitioner placed local and long-distance calls to, and received calls from, customers during his day at the office. Petitioner observed market developments on stock market boards at his office; to keep himself abreast of the latest stock market trends and developments he also read financial journals and periodicals while there.

Petitioner's business as a customers man was highly competitive in 1962. The amount of his income depended on his developing and maintaining investment business from customers. Most of his customers were personal friends or persons recommended to him by his friends or relatives. In his judgment frequent entertainment of many of his customers or potential customers was necessary in order to be an effective salesman. His employer expected petitioner to do necessary entertaining.

For the purpose of promoting his sales business, petitioner took customers and potential customers to lunches, dinners, and cocktail meetings at various restaurants in downtown Chicago each week. He also incurred expenses for club dues in order to provide a place for meeting with customers. One feature of his club's program was an annual golf outing to which he invited 15 customers at a cost of $10 per person. He also, from time to time, bought tickets to theater and sporting events and gave them to his customers. As a further service for his customers while they were at his office, petitioner provided coffee.

Petitioner sent flowers to customers and potential customers when they were in the hospital or on some special occasion. At Christmas,

petitioner made gifts to service personnel at Sincere & Co. to maintain prompt and efficient telephone, telegraph, and margin services. In addition, petitioner incurred long-distance and local telephone business expense for calls from his home to customers whom he was unable to reach on his employer's telephone.

He also subscribed at his own expense to financial journals and periodicals which he read to keep current on market trends and developments with respect to particular securities. The homes and offices of his customers were widely scattered over the city of Chicago, and he expended substantial sums for taxicab fares in carrying out his work.

In computing "net wages" on his Federal income tax return for 1962, petitioner deducted $5,784.44 as "Salesman's Expenses." He reported such expenses to consist of the cost of lunches, $741 ($988 less personal expenses of $247); dinners, $1,017 ($1,356 less personal expenses of $339); club dues and entertainment, $459 ($540 less personal expenses of $81); cocktail meetings, $1,077.44; tickets to theaters and sporting events for clients, $450; flowers, $240; coffee for clients in office, $364; gifts and gratuities, $700; home telephone, $240 ($360 less personal expenses of $120); dues and subscriptions, $132; and cabs, $364.

Petitioner was not reimbursed by his employer for any of the business expenses that he incurred. He kept no books, records, receipts, or other memoranda reflecting the amount of such expenses in 1962. In preparing his return for 1962, he estimated his business expenses for the year on the basis of expenses incurred for a period of a month or two. Beginning in 1963, petitioner kept records of his business expenses and such records for 1963 reflect expenditures of approximately the same amount as he deducted for 1962. His business activities in 1962 were substantially similar to those in 1963.

In his notice of deficiency dated March 4, 1966, respondent disallowed the full amount of the "Salesman's Expenses" of $5,784.44 deducted by petitioner and determined a deficiency of $1,515.12 for the taxable year 1962.

## ULTIMATE FINDINGS OF FACT

Petitioner incurred ordinary and necessary business expenses of $1,700 in 1962 in connection with his work as a registered representative for Sincere & Co. He was not an outside salesman in that year, within the meaning of section 62(2)(D).

## OPINION

Petitioner contends that, in 1962, he incurred business expenses of $5,784.44 which, as an "outside salesman" within the meaning of Code

section 62(2) (D), he is entitled to deduct in computing adjusted gross income as well as to take the standard deduction of $1,000 allowed on a joint return by section 141(a). Respondent contends that petitioner has not substantiated business expenses of $5,784.44, or any amount; that the evidence clearly shows that petitioner was not an "outside salesman," and that, accordingly, any business expense, if allowable, is deductible only from adjusted gross income as an itemized expense under section 162 in arriving at taxable income.

The evidence, we believe, quite clearly establishes that petitioner incurred a substantial amount of unreimbursed expenses in connection with his employment as a registered representative or salesman for the Chicago stockbrokerage firm. However, he kept no adequate records of his expenditures in 1962 and prepared his return by using estimates based on expenditures for representative periods. While his 1963 records reflect recorded expenses for that year which approximated the amounts deducted for 1962 and his business activities were similar, we are not convinced that his claimed expenditures do not include twice-deducted or nonbusiness expenses, or both. Applying the rule of *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930), and bearing heavily on the taxpayer for his lack of substantiating records, we have found that his deductible business expenses in 1962 amounted to $1,700.[2]

The next question is whether petitioner may deduct these business expenses and also claim the standard deduction authorized by section 141(a). To support the deduction of both, petitioner relies upon section 62(2) (D).[3] This latter section permits an individual employee, in computing adjusted gross income, to deduct ordinary and necessary business expenses under section 162, as well as certain other expenses, from gross income if the trade or business of such individual "is to solicit, away from the employer's place of business, business for the employer." In addition, such an individual may subtract the standard deduction allowed by section 141(a) from adjusted gross income in computing taxable income.

---

[2] Respondent conceded that the *Cohan* rule is applicable to the taxable year 1962. The substantiation requirements of sec. 274(d) and the regulations thereunder, recently sustained in *William F. Sanford*, 50 T.C. 823 (1968), do not apply.

[3] SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

*     *     *     *     *     *     *

(2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—

*     *     *     *     *     *     *

(D) OUTSIDE SALESMEN.—The deductions allowed by part VI (sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer.

Section 62(2)(D) was brought into the law by the 1954 Code to eliminate a double standard then existing for computing the adjusted gross income of self-employed salesmen and employee salesmen. Under the 1939 Code, self-employed salesmen could deduct all business expenses in calculating adjusted gross income (with the limitation that they could deduct expenses for meals and lodging only if incurred while away from home), and still use the standard deduction in determining taxable net income. However, employee salesmen were subject to different rules. The only expenses which they could deduct in computing their adjusted gross income were: (1) Business expenses incurred for travel, meals, and lodging while away from home, and (2) reimbursed business expenses other than for travel, meals, and lodging. Sec. 22(n)(2), (3), I.R.C. 1939. As a practical matter, the deduction for reimbursed business expenses merely offset the reimbursements, the amounts of which were required to be included in gross income. Thus, many business expenses incurred by employee salesmen were deductible only from adjusted gross income in arriving at taxable net income. The result was in many cases to deny employee salesmen the combination of business expense deductions and the standard deduction allowed self-employed salesmen.

Section 62(2)(D) was designed to erase this disparity as to "outside salesmen" by allowing them to deduct their business expenses in arriving at adjusted gross income even though such salesmen also use the standard deduction. See Hearings before the House Committee on Ways and Means on H.R. 8300, 83d Cong., 1st Sess., Part 1, pp. 210–220 (1953); Hearings before the Senate Committee on Finance, 83d Cong., 2d Sess., Part 4, pp. 2394–2397 (1954); C. Bowen, "The Tax Problems of Salesmen," 34 Taxes 179 (1956).

Not all salesmen who solicit business outside an office, however, qualify for the benefits of section 62(2)(D). The implementing regulation (sec. 1.62–1(h), Income Tax Regs.) interprets the section as follows:

An outside salesman is an individual who solicits business as a full-time salesman for his employer away from his employer's place of business. The term "outside salesman" does not include a taxpayer whose principal activities consist of service and delivery. * * * However, an outside salesman may perform incidental inside activities at his employer's place of business, such as writing up and transmitting orders and spending short periods at the employer's place of business to make and receive telephone calls, without losing his classification as an outside salesman.

Thus, only a salesman "engaged principally in the solicitation of business for his employer at places other than the employer's place of business" is accorded the benefits of the section. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 10 (1954).

This regulation is wholly consistent with the technical explanations included in the committee reports of section 62(2)(D)[4] and is a reasonable interpretation which must be sustained. See, e.g., *Commissioner v. South Texas Co.*, 333 U.S. 496, 501 (1948); *William F. Sanford*, 50 T.C. 823 (1968).

While it is true that petitioner as an employee solicited "away from the employer's place of business, business for the employer" within the literal language of section 62(2)'(D), we think it quite clear that he does not qualify for the benefits accorded "outside salesmen." The work which he was required to perform during the 5½ hours, from 9 a.m. to 2:30 p.m. each day, at the place of business of his employer was in no sense incidental to the solicitation work which he did away from the employer's place of business. While at the stockbrokerage office he talked with, and advised, customers on investments; he received orders from his customers, and bought and sold stock and other securities on their behalf; he placed local and long-distance telephone calls to, and on behalf of, his customers; he read periodicals designed to keep him informed on the latest stock market developments; he observed developments on the stock market boards; and he placed the orders which he obtained as a result of his calls on customers and potential customers outside of the office. These activities constituted the principal part of his work.

Accordingly, we conclude that petitioner was not an "outside salesman" in 1962 and is not entitled, in computing adjusted gross income, to deduct any part of the $1,700[5] which we have found that he expended for business purposes in that year but must deduct such amounts from gross income in computing his taxable income.

*Decision will be entered under Rule 50.*

---

[4] H. Rept. No. 1337, 83d Cong., 2d Sess., p. A 20 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 169–170 (1954), defined the boundaries of sec. 62(2)(D) in this respect as follows:

An "outside salesman" is an individual who is a full-time salesman who solicits business away from his employer's place of business. * * * [N]ot within the definition are salesmen whose principal activities consist of selling at the employer's place of business but who incidentally make outside calls and sales. (These salesmen are eligible, however, for a deduction of transportation expenses under subparagraph (C).) Outside salesmen who have incidental activities at the employer's place of business, such as writing up and transmitting orders, spending short periods at the employer's place of business to make or receive telephone calls, will still be eligible for the deduction allowed to "outside salesmen." A full-time "outside salesman" may deduct such expenses as those for telephone and telegraph, secretarial help, and entertainment.

Technical explanations have been held to integral parts of the committee reports. See *Mt. Mansfield Co.*, 50 T.C. 798 (1968), and cases cited therein.

[5] Petitioner incurred expenses for taxicab fares which may qualify as "expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee" under sec. 62(2)(C) which are deductible in computing adjusted gross income even though the taxpayer takes the standard deduction. But we need not decide this question since petitioner's other expenses deductible under sec. 162 in computing taxable income exceed the $1,000 standard deduction.