LeROY W. GILLIS & ALICE F. GILLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gillis v. Commissioner
Docket No. 5765-70.
United States Tax Court
T.C. Memo 1973-96; 1973 Tax Ct. Memo LEXIS 191; 32 T.C.M. (CCH) 429; T.C.M. (RIA) 73096; April 24, 1973, Filed LeRoy W. Gillis, pro se. Eli H. Schmukler, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' income tax: Year
Deficiency
Addition to the tax [1] (Sec. 6653(a))
1965
$1,064.58
$53.23
1966
1,006.46
50.32
1967
1,016.41
50.82
*192 2 Some issues have been disposed of by agreement between the parties, with the result that only the following issues remain for our consideration: 1. Whether petitioners are entitled to any deduction for the expenses of maintaining an office for LeRoy Gillis in petitioners' home during the years in question. 2. Whether petitioners are entitled to depreciate the cost of furnishings purchased by LeRoy Gillis and used in the office provided for him by his employer. 3. Whether petitioners are entitled to deductions for expenses of an automobile used by LeRoy Gillis in his business in amounts in excess of those allowed in the notice of deficiency. 4. Whether petitioners are entitled to a deduction for the expenses relating to a boat allegedly used by LeRoy Gillis in his business. 5. Whether LeRoy Gillis is an outside salesman within the meaning of section 62(2) (D). 6. Whether petitioners are liable for the 5-percent negligence penalty imposed by section 6653(a). Some of the facts are stipulated and are incorporated herein by this reference. Petitioners LeRoy W. Gillis *193 (hereinafter referred to as the petitioner) and Alice F. Gillis, husband and wife, resided in Mardela Springs, Maryland, at the time their 3 petition herein was filed. Joint Federal income tax returns for the years in question were filed with the district director of internal revenue at Baltimore, Maryland. Alice F. Gillis is a party herein solely because she joined in the filing of such returns. Petitioner became a district sales manager for Home Beneficial Life Insurance Co. (hereinafter Beneficial) on September 1, 1952 and held that position during the years in question. His area, generally known as the Salisbury district, covered Wicomico, Worcester, and Somerset Counties (all in Maryland), an area having a 25-mile radius from Beneficial's Salisbury office. He directly supervised four staff managers, about twenty field agents working under these staff managers, and various secretarial and bookkeeping personnel associated with Beneficial's Salisbury office. Petitioner's duties were many and varied, including sales promotion, recruitment of new personnel, reviewing of all claims, occasional visits to field agents (a task usually performed by his staff managers and one *194 of their primary functions), holding promotional meetings, training new agents, preparing a weekly bulletin, daily trips to the post office on his way to work and on the way home, checking complaints from and against field agents, and maintaining a good working relationship with personnel under his supervision. 4 Petitioner's income consisted of a base salary of $9,000 to $10,000 during each of the taxable years in question, plus commissions of about $4,000 to $5,000. The commissions consisted of an "overriding commission" on all policies sold by agents in his district plus commissions on the few policies he himself sold; these latter commissions comprised about 10 percent of his total commissions, or about 5 percent of his total income from Beneficial. The issues involved herein are almost entirely factual, and, for the most part, the evidence consists of the uncorroborated testimony of petitioner, although it is apparent that some corroboration of such testimony could have been offered without undue difficulty. [2] Additionally, our confidence in petitioner's testimony has been shaken by the fact that, at least insofar as the evidence relating to automobile expenses is *195 concerned, there are indications that the evidence may well have been tampered with. Moreover, petitioner has not convinced us that he is as naive or as lacking in knowledge of tax law and procedure as he would have us believe. We have meticulously examined the record herein, and our findings and conclusions are based upon that record as a whole and our evaluation of the petitioner as a witness, keeping in mind that petitioners 5 have the burden of proof. Rule 32, Tax Court Rules of Practice.
1. Home Office and Telephone Expense Beneficial provided petitioner with an office in its Salisbury quarters, which was 12 miles and 15 minutes away from his home in Mardela Springs. The quarters consisted of a one-story building built by Beneficial for its exclusive use. No one ever worked at night in the front part of the building, where petitioner's office was located; the back part, which had no windows, and was separated from the front part by a locked door, was occasionally used at night by field agents. Petitioner also maintained a separate room in his residence *196 at Mardela Springs as an office, although he was not required to do so by Beneficial. This office contained a desk, sofa, table, chair, and bookshelves. Petitioner spent most of his weekday evenings in this room, reading new rules and regulations governing Beneficial's business, preparing a weekly bulletin which he sent to his agents, occasionally interviewing prospective agents (petitioner usually sought people already employed, thus necessitating eveining interviews in some cases), and maintaining a skeleton supply of various forms for agents to pick up when they exhausted their own supply and were unable to go to the Salisbury office to get more. Petitioner maintained 6 a phone in this room, as well as an extension in the hallway outside his bedroom. This number was listed in the phone book as his residence only, without further clarification. Petitioner and his wife used these phones for both personal and business matters. Petitioner's office took up one-eighth of the area of his home, and the following capital improvements and expenses were made with regard to the residence in general: Year
Amount
Nature of expense 1965
$2,315.76
Capital improvement
783.44
Residential expenses
141.24
Telephone charges - base rate only
1966
76.53
Capital improvement
579.75
Residential expenses
132.24
Telephone expenses - base rate only
1967
109.37
Capital improvement
538.13
Residential expenses
11.00
Electrical work in home office
139.92
Telephone expenses - base rate only
*197 The capital improvements had a useful life of 15 years. Also in 1965, petitioners spent $404.50 for home office furnishings having a useful life of 10 years. Respondent contends that petitioner's duties did not necessitate the maintenance of an office in his home, because the office furnished him by Beneficial was "completely adequate" to accomplish what petitioner did at home and was 7 located near enough to petitioner's home so that he could have worked there at night. While not going as far as his published position in Rev. Rul. 62-180, 1962-2 C.B. 52, in which an employee was said to be able to deduct the expense of maintaining an office in his home only if his employer required the employee to provide his own office space, respondent nevertheless contends that, since Beneficial provided petitioner with the necessary facilities for proper performance of his duties, his home office was merely a "duplication" of such facilities and the expenses thereof are not deductible by virtue of section 262. Neither the absence of an employer requirement that a home office be maintained nor the mere existence of duplicate facilities in and of itself demands the disallowance *198 of a deduction of home office expenses. Rather, the test is whether, like any other business expense, the maintenance of an office in the home is appropriate and helpful under the circumstances or simply serves the personal convenience of the taxpayer. Newi v. Commissioner, 432 F.2d 998 (C.A. 2, 1970), affirming a Memorandum Opinion of this Court. [3]
We have carefully considered the various factors involved in determining the deductibility of the expenses of petitioner's home office, including the distance from his regular office to his home, the hazards of working alone at night in a one-story building in Salisbury, *199 the nature of the work performed at home, and the fact that the office was maintained as a separate room for business use. We think the maintenance of the office was more than for petitioner's convenience; it was appropriate and helpful in carrying on his duties as Beneficial's district sales manager for the Salisbury area. Newi v. Commissioner, supra.
On the other hand, we are satisfied that petitioner did not use the office entirely for business purposes. Using our best judgment, we find that he used the office 80 percent for business and 20 percent for personal purposes. Accordingly, during each of the taxable years in question, petitioner is entitled to a deduction for depreciation based on 80 percent of one-eighth of the capital expenditures and on 80 percent of the amount expended for home office furnishings in 1965, and a further deduction of 80 percent of one-eighth of the "residential expenditures." 9 With regard to petitioner's telephone expenses, we cannot accept his assertion that the only phone in the home was used 100 percent for business purposes. Inherent in that claim is the assertion that petitioner had no social friends, only business associates, *200 and, therefore, every call, incoming or outgoing, was for business reasons. Such an assertion defies belief. In view of the fact that petitioner offered no further explanation of his telephone expenses, we have no alternative but to sustain respondent's determination. 2. Boat Expense During the taxable years in question, petitioner maintained a 19-foot outboard fishing boat at his cottage in Greenbackville, Virginia (located 42 miles from Mardela Springs). Petitioner and his wife spent almost every weekend from the beginning of April to the end of October at Greenbackville. Usually, petitioner would arrange in advance a fishing trip for a number of people, at least one of whom was considered by petitioner to be a prospective customer or "center of influence." [4] Other times, he would make arrangements with such people who lived in Greenbackville 10 after he got there. After each outing, petitioner would *201 record in a log which he kept the name of the person and, in a very general way, the nature of their business discussions. He did not record the number of other people on the boat for any of the trips. Petitioner contends that he is entitled to deduct the expense of his boat and the entertainment provided thereon as an ordinary and necessary expense of his business. We think petitioner has failed to demonstrate that the use of his boat in the manner claimed reflected any more than a general hope that he would generate some vaguely defined good will and a consequent remote possibility that he might derive some business benefit therefrom. As a consequence, we hold that petitioners have not carried their burden of proof that the expenditures in question were ordinary and necessary within the meaning of section 162. American Lithofold Corp., 55 T.C. 904, 922-923 (1971); Ralph E. Larrabee, 33 T.C. 838 (1960). [5] Additionally, even if the requirements of section 162 were met, petitioners have failed to demonstrate that they have met the conditions of section 274 which demand that expenditures in connection with an entertainment facility, which the boat clearly *202 was, 11 be at the very minimum "directly related to * * * the active conduct of the taxpayer's trade or business." Cf. Hippodrome Oldsmobile, Inc. v. United States, F.2d (C.A. 6, 1973); Delores Bussabarger, 52 T.C. 819, 827-829 (1969); sections 1.274-2(b) (1) (i) and 1.274-2(c), Income Tax Regs.
Respondent's determination on this issue is sustained. 3. Automobile Expenses During the years in question, petitioner owned at least two automobiles at all times. Until March 9, 1966, he owned a 1961 Thunderbird which he drove to work and used for business calls. On the latter date, he purchased a 1966 Chrysler convertible. Thereafter, the Thunderbird was used by petitioner's wife. Petitioner used the Thunderbird until March 1966 and thereafter the Chrysler to drive to work, to make business calls, to drive to his summer cottage in Greenbackville on weekends, and for other purposes. Petitioner's business calls included weekly trips to Beneficial's main office in Pocomoke, Maryland (29 miles from the Salisbury office) and occasional visits with agents in the field, their families, and *203 customers, both present and potential. Petitioner usually kept the odometer concealed from view by a band-aid or decal. 12 The evidence relating to this item is confusing and contradictory, resulting, in no small degree, from the facts that petitioner claimed that his car was used 100 percent for business, that, for reasons best known to him, he usually concealed the odometer on the car, that the mileage redings submitted reflect differing figures depending upon who took the readings, and that some of the documents showing the mileage were the suject of tampering. [6] Beyond this, the mileage included daily travel between petitioner's home and his Salisbury office, the expense of which clearly constitutes commuting and is nondeductible. Julio S. Mazzotta, 57 T.C. 427 (1971), affirmed per curiam, 465 F.2d 1399 (C.A. 2, 1972); see, e.g., Clinton H. Mitchell, 42 T.C. 953, 970 (1964). Additionally, in view of our holding in regard to the boat expenses, the cost of travelling between Mardela Springs and Greenbackville (the mileage for which is also included) is a nondeductible personal expense. On the other hand, we are satisfied that petitioner *204 utilized his automobile for business purposes to a greater extent than is represented by respondent's allowance in the deficiency notice. Making the best 13 estimate we can on the basis of the record before us, we find that petitioner travelled in his automobile 4,000 miles in each of the taxable years in question for business purposes and hold that he should be allowed a deduction of 10 cents per mile (the amount agreed upon by the parties as the measure of the deduction) [7] for each mile up to that figure in excess of the 2,217 miles annually allowed by respondent. With this exception, petitioner has failed to sustain his burden of proof as to the extent to which his automobile expenses were incurred for business use. Emil J. Michaels, 53 T.C. 269, 275 (1969). 4. Office Furniture At the time the Salisbury quarters *205 were opened, Beneficial supplied new furniture for every office except petitioner's. Petitioner's office was provided with a large old metal desk, a desk chair, and an old worn chair, used in Beneficial's previous quarters. The failure to provide petitioner with new furniture was due, in part, to a personality conflict between petitioner and the man Beneficial designated to furnish the new building. Petitioner did not want to ruffle any feathers by complaining to the man's superior, but, at the same time, felt that he could not maintain his status in such 14 surroundings, particularly with regard to interviews with prospective clients, agents, and other people he frequently saw in his office. Therefore, in 1965, petitioner purchased a naugahyde sofa, a walnut desk, and draperies and had his office chair reupholstered, at a cost of $331.81 and having a useful life of 10 years. Petitioner never asked Beneficial for reimbursement, nor did Beneficial's president, when he learned of petitioner's expenditures, offer to reimburse him for his outlay. With regard to petitioner furnishing the office supplied for his use by Beneficial, we recognize that petitioner's actions were quite *206 unusual; however, the circumstances in which he found himself were also unusual. Petitioner exercised a tolerable degree of employee prudence in not going over the decorator's head for help. We think petitioner's desire not to upset the apple cart, coupled with the obvious necessity of maintaining his "image" as a successful district sales manager, was sufficient reason to justify his incurring the expenditures in question, and we consider them appropriate and helpful under the particular circumstances of this case. Accordingly, petitioners are entitled to an allowance for depreciation with respect to 15 such furnishings in the amounts stipulated by the parties. 5. "Outside Salesman" Status Petitioner asserts he was an "outside salesman" during the years in question and entitled to deduct certain employee expenses from gross income rather than adjusted gross income. Section 62. Section 1.62-1(h), Income Tax Regs., states that: * * * An outside salesman is an individual who solicits business as a full-time salesman for his employer away from his employer's place of business. The term "outside salesman" does not include a taxpayer whose principal activities consist *207 of service and delivery. * * * However, an outside salesman may perform incidental inside activities at his employer's place of business, such as writing up and transmitting orders and spending short periods at the employer's place of business to make and receive telephone calls, without losing his classification as an outside salesman. Thus, only a salesman engaged principally in solicitation of business for his employer at places other than the employer's place of business is accorded the benefits of the section. S. Rept. No. 1622, 83rd Cong., 2d Sess., p. 10 (1954); Syd Novak, 51 T.C. 7, 11 (1968). In the instant case, petitioner's primary source of income was his salary, for which he performed substantial managerial services day and night in one of his two offices. A very small percentage of his income, about 5 percent, was derived from direct sales of insurance by himself. Clearly, petitioner is not an outside salesman 16 within the meaning of section 62(2) (D). Syd Novak, supra at 12. 6. Addition to Tax Respondent has asserted a 5-percent addition to tax for "negligence or intentional disregard of rules and regulations" under section *208 6653(a). The burden of proof on this issue is on the petitioner. Robert L. Bunnel, 50 T.C. 837, 843 (1968). Petitioner's general philosophy seems clearly to have been predicated upon definitions of business associates and contacts and business use which are so expansive that they can only be characterized as totally unreasonable. His claims that his automobile was used 100 percent for business (although it obviously included commutation travel), that his one home telephone was never used for personal purposes, and that his boat was similarly utilized exclusively for business support this conclusion. At least a part of petitioner's underpayment was due to negligence, and, accordingly, we hold that respondent's determination should be sustained. [8]Robert L. Bunnel, supra; David Courtney, 28 T.C. 658 (1957). Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. At the trial, the Court called petitioner's attention to the problems inherent in uncorroborated testimony. ↩
3. Cf., e.g., Richard Keith Johnson, T.C. Memo. 1972-192; James L. Denison, T.C. Memo. 1971-249; Christopher A. Rafferty, T.C. Memo. 1971-203; Imero O. Fiorentino, T.C. Memo. 1970-316, affirmed in open court, 455 F.2d 1406 8 (C.A. 2, 1971). Valentine J. Anzalone, T.C. Memo. 1964-81↩, heavily relied on by respondent, is clearly distinguishable on the ground that the record therein shows that the taxpayer maintained an office in his home merely for his own convenience. 8 4. A "center of influence," in petitioner's eyes, is a person who, by virture of his reputation and standing in a community, church, or club, has a following which would be influenced by this person's choice of a life insurance company and his choice of friends. ↩
5. Compare also Imero O. Fiorentino, supra↩, footnote 3. 6. For example, if we compare respondent's agent's reading of September 25, 1968 (76,957) with the inspection station's reading of October 12, 1968 (76,940), we find that petitioner's car travelled minus 17 miles in two-and-a-half weeks, an event which defies rational explanation. ↩
7. See Rev. Proc. 64-10↩, 1964-1 C.B. (part 1) 667. 8. In this connection, for 1966, we note that petitioner has conceded the disallowance of a claimed deduction of $122.24 for a vehicular titling tax which he allegedly paid to the state of Virginia; in fact, Virginia had no such tax in 1966. ↩