ESTATE OF DAVID WEIN, DECEASED, AND ESTATE OF EDITH WEIN, DECEASED, SIDNEY WEIN, EXECUTOR, PETITIONER, *v. COMMISSIONER* OF INTERNAL REVENUE, RESPONDENT

Docket No. 91499.   Filed May 31, 1963

*Meyer Sugarman*, for the petitioner.
*Arthur Pelikow*, for the respondent.

### OPINION

FORRESTER, *Judge:* Respondent determined a deficiency of $31,-068.82 in income tax for the taxable year 1955. Petitioner has conceded a minor adjustment, and the parties have stipulated that the amount of the deduction allowable for drug and medical expenses is controlled by our resolution of the sole issue before us.

That issue is whether or not gain is recognized upon the actual incorporation of a sole proprietorship which had previously made a valid election to be taxed as a domestic corporation under section 1361(a) of the Internal Revenue Code of 1954.[1]

All of the facts have been stipulated and are so found.

Petitioner, Sidney Wein, is the duly qualified executor of the estate of David Wein, who died on October 25, 1955, and the duly qualified executor of the estate of Edith Wein, who died on February 15, 1955. He filed a joint Federal income tax return for the taxable year 1955 on behalf of the aforesaid estates with the district director of internal revenue at Newark, N.J.

Decedent David Wein, hereinafter referred to as David, had for a number of years conducted as a sole proprietorship a business known as David Wein Textiles. On February 25, 1955, David, as sole proprietor of David Wein Textiles, made an election under section 1361(a)[2] to be taxed as a corporation. In accordance with the aforesaid election, corporate income tax returns (form 1120) were filed

---

[1] All statutory references are to the Internal Revenue Code of 1954. All references hereafter to "subchapter C" and "subchapter R" refer to subchapters C and R of chapter 1 of the 1954 Code.

[2] SEC. 1361.   UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS.

(a) GENERAL RULE.—Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his delegate, not later than 60 days after the close of any taxable year of a proprietorship * * * by the proprietor * * * at any time on or after the first day of the first taxable year to which the election applies * * * to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years.

under the name of David Wein Textiles for the taxable year 1954 and for the taxable period January 1 to March 31, 1955.

On April 1, 1955, David Wein Textiles ceased doing business in unincorporated form and its assets and liabilities were transferred to David Wein Inc., a corporation organized under the laws of the State of New Jersey, and the business was thereafter conducted in actual corporation form.

A corporation income tax return under the name of David Wein Inc. was filed for the fiscal year beginning April 1, 1955, and ending March 31, 1956.

Respondent determined that the above actions (the actual incorporation) terminated the election of the sole proprietorship to be taxed as a corporation and effected a distribution in complete liquidation, resulting in long-term capital gain to David under section 1361(1).[3] Respondent's theory and argument in support of this determination is that all of the assets and liabilities of the subchapter R corporation passed first to David, thus bringing section 1361(1) into play, and thereafter passed from David to the actual corporation.

Respondent argues that since an election to be taxed as a subchapter R corporation is irrevocable under section 1361(e),[4] absent exceptions which do not here apply, and that since the business or enterprise is still continuing in other than subchapter R form, that a "Distribution in Liquidation" under section 1361(1), *supra*, effecting a revocation, must have occurred.

We are here in the area of the already complicated deferment, or nonrecognition, provisions of the Code and dealing with a question which is one of first instance and which further complicates them by superimposing upon them the concept of a pseudocorporation created under subchapter R.

Petitioner's theories and arguments are unclear and hard to follow, but seem to fall into three categories, i.e., (1) nonrecognition because of the exception of section 1361 (m)(1),[5] (2) nonrecognition because

---

[3] SEC. 1361. UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS.

(1) DISTRIBUTIONS IN LIQUIDATION.—A distribution in partial or complete liquidation with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), shall be treated as a corporate liquidation in accordance with part II of subchapter C of this chapter.

[4] (e) ELECTION IRREVOCABLE.— * * * the election described in subsection (a) shall be irrevocable—

(1) with respect to an enterprise as to which such election has been made and the proprietor or partners of such enterprise; and

(2) any unincorporated successor to the business of such enterprise and the proprietor or partners of such successor.

[5] (m) ORGANIZATIONS AND REORGANIZATIONS.—An enterprise as to which an election has been made under subsection (a) shall not be considered a corporation, nor shall the proprietor or partners of such enterprise be considered shareholders, for purposes of parts III and IV of subchapter C of this chapter (relating to corporate organizations, and reorganizations, and insolvency reorganizations) except in the case of—

(1) a contribution of property, constituting either paid-in surplus or a contribution to capital, on which gain or loss is recognized; and

(2) the organization of an enterprise as to which the election described in subsection (a) is made for its first taxable year.

of the exception of section 1361(m)(2),[6] and (3) nonrecognition because subchapter R nowhere specifically deals with the precise problem of formation of an actual corporation with the assets, liabilities, and business of a subchapter R, pseudocorporation and that therefore the nonrecognition principles of corporate organizations should apply. We shall treat them in that order although we do not necessarily agree that (m)(1) and (m)(2) are in the disjunctive, as petitioner seems to assume.

### Section 1361(m)(1) Exception

Petitioner seems to contend that the exception of 1361(m)(1) has "saved" the nonrecognition provisions of a section 351[7] organization. Petitioner then misquotes the exception as follows: "a contribution of property, constituting either paid-in surplus, or a contribution of [should read "to"] capital, on which gain or loss is recognized."

If petitioner's argument is that all increment and net income realized by the pseudocorporation and thereafter contributed to the true corporation constituted paid-in surplus and thereby qualified for the exception, his argument is not well taken for, as indicated above, there is no comma after the word "surplus" and the phrase "on which gain or loss is recognized" is fully applicable to "a contribution of property, constituting * * * surplus." No gain or loss was in fact returned by petitioner, and his position is that none should be, therefore the exception is not applicable.

### Section 1361 (m)(2) Exception

This exception reads:

(2) the organization of an enterprise as to which the election described in subsection (a) is made for *its first taxable year.* [Emphasis supplied.]

Petitioner argues that subchapter R first became law during 1954 (Aug. 16, 1954) and that therefore the phrase "first taxable year" cannot be applied to the year 1954.

We find this argument entirely specious, for this petitioner, in compliance with the provisions of section 1361(a), elected to be taxed as a pseudocorporation for the year 1954 and so filed his return. It is true that such election and the subsequent formation of the true, State-chartered corporation both occurred in the same year (1955), but the election was made on February 25, 1955 (not later than 60 days after the close of the first taxable year (1954), as to which it was applicable). To recognize petitioner's argument on this point then would,

---

[6] See footnote 5, supra.

[7] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control * * * of the corporation. * * *

under the facts of this case, indeed give him the option as an individual of electing either corporate or individual rates for his business enterprise. This is a result which Congress surely did not intend or anywhere indicate in subchapter R.

### Argument That the Instant Case Lies Outside the Provisions of Subchapter R

Petitioner's theory here is simply that the tax treatment of formal incorporation of a subchapter R pseudocorporation is not dealt with specifically by section 1361, and that the regulations, in attempting to fill this void, are invalid. Petitioner's argument then seems to proceed to the conclusion that we should therefore ignore the election and the prior existence of the pseudocorporation and treat the transfer to David Wein Inc., the true corporation, as having been made by David, and therefore nonrecognizable under section 351, *supra.*

Petitioner overlooks the fact that a part of these contributed assets could have been (and here actually were) net earnings of the pseudocorporation for 1954 and for the period January 1 to March 31, 1955, which had been taxed at corporate, rather than at individual, rates. Presumably the individual rates would have been higher, else the 1361(a) election would never have been made. Petitioner, then, would have us ignore this fact and also forget for the moment that David Wein Textiles had ceased to do business, and treat the exchange of "the assets" for the stock of David Wein Inc. as a tax-free, or more properly, a tax-deferred corporate organization under section 351.

This we cannot do. Section 1361(m) specifically provides that for purposes of section 351 the proprietor of a section 1361 corporation shall not be considered to be a shareholder of such corporation. When David formed and funded David Wein Inc. therefore, he was not conveying pseudostock of the pseudocorporation to it in exchange for its stock. What he did convey to it was "the assets." He had had actual title to and ownership of these assets all along, but with the important exception that they were considered to be the assets of the pseudocorporation for Federal tax purposes.

Of course, no one owned the net earnings of the pseudocorporation until they were earned, for they were not in existence. Once earned, they were taxed at corporation, rather than at individual rates, and for Federal income tax purposes they belonged to the pseudocorporation. David Wein could have gotten them, *inter alia*, by a distribution under section 1361(k),[8] but then they would have been taxed to him at ordinary rates as a dividend. Respondent seeks less by his

---

[8] (k) DISTRIBUTIONS OTHER THAN IN LIQUIDATION.—Except as provided in subsection (1), a distribution with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), other than a distribution of personal holding company income under subsection (i)(3), shall be treated as a corporate distribution in accordance with part I of subchapter C of this chapter.

assertion of the principles of a liquidating distribution under section 1361(1) and we believe that respondent's position is correct.

Stated otherwise, we cannot consider that David Wein, individually, owned these net earnings of the pseudocorporation (on which only the corporate income tax rates had been imposed), unless the requisite parts of section 1361 be followed with precision, otherwise such pseudocorporations would be simply a device under which an individual could elect to be taxed at corporate rates. It seems obvious that if the pseudocorporation had suffered net operating losses the positions of the parties would be reversed, for petitioner would want all possible tax advantages attendant upon the decreased value of his pseudostock.

The situation as to "the assets" of the pseudocorporation, other than net earnings, is no less clear. Assume that assets other than earnings had appreciated (or depreciated) in value during the lifetime of the pseudocorporation. No merger or reorganization of the pseudo and the real corporations (with attendant carryover bases) is possible because of 1361(m). David Wein has always owned these assets as an individual, save for the here all-important exception that, when he elected under 1361(a), he no longer owned them for purposes of the Federal income tax. Section 1361(c):

CORPORATE PROVISIONS APPLICABLE.— * * * an unincorporated business enterprise as to which an election has been made under subsection (a), shall * * * be considered a corporation *for purposes of this subtitle* * * * with respect to operation, distributions, sale of an interest, and any other purpose; and each owner of an interest in such enterprise shall be considered a shareholder thereof in proportion to his interest. [Emphasis supplied.]

The organization of a true corporation under section 351 is ordinarily (requisite conditions existing) a so-called nontaxable or, more properly, a nonrecognition event, with carryover basis, but nevertheless it is surely an event pregnant with tax potentials and results and directly the subject of numerous sections of the Code. In this sense it is an event "for purposes of this subtitle [Subtitle A—Income Taxes]" (section 1361(c)), and the contributed assets therefore were owned by the pseudocorporation, and were necessarily distributed to David before incorporation of the State-chartered corporation.

Again, 1361(m) prevents the pseudocorporation and the pseudoshareholder from participating in corporate organizations or reorganizations; a true corporation was in fact organized and the inescapable conclusion is that it was organized by David after he had recovered the assets of his pseudocorporation by a distribution in liquidation under 1361(1).

The applicable portions of the regulations are in accord with our conclusions.

Reviewed by the Court.

*Decision will be entered for the respondent.*

RAUM, BRUCE, and HOYT, *JJ.*, concur in the result.