THOMAS J. DUNN and GLORIA I. DUNN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunn v. Commissioner
Docket No. 4652-73
United States Tax Court
T.C. Memo 1975-191; 1975 Tax Ct. Memo LEXIS 184; 34 T.C.M. (CCH) 824; T.C.M. (RIA) 750191; June 17, 1975, Filed Thomas J. Dunn and Gloria I. Dunn, pro se. Kenneth B. Wheeler, for the respondent. STERRETT
MEMORANDUM FINDINGS *185 OF FACT AND OPINION STERRETT, Judge: The respondent determined deficiencies in petitioners' income tax and additions thereto under section 6653(a), I.R.C. of 1954[1] for the taxable years 1969 and 1970 as follows: Year
Deficiency
6653(a)
1969
$452.72
$22.64
1970
574.76
28.73 Petitioners have conceded some issues leaving for our decision whether respondent has correctly redetermined the tip income received by petitioner Gloria I. Dunn during 1969 and 1970, whether petitioners made charitable contributions of personal property as claimed during 1969 and 1970, and whether the petitioners are liable for the 5 percent penalty imposed by section 6653(a) for negligence or intentional disregard of rules and regulations for both 1969 and 1970. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Thomas J. Dunn and Gloria I. Dunn (hereinafter petitioner), are husband and wife *186 who resided in Clearwater, Florida at the time of filing of their petition herein. Petitioners filed their 1969 and 1970 individual federal income tax returns with the internal revenue service center, southeast region in Chamblee, Georgia. Petitioner began working in 1959 as a food waitress at the Kapok Tree Inn Restaurant (hereinafter Kapok) in Clearwater, Florida. In 1967 she became a cocktail waitress in the Emerald Lounge, one of the lounge rooms that was part of the Kapok, and was so employed during the years in issue. During the years in issue the bar manager of the Kapok was the uncle of the petitioner. The Kapok, which enjoys a fine reputation, has a dining room and several lounge rooms. The restaurant is nicely decorated with gardens, waterfalls, and statuary in the surrounding area. The lounge rooms are used for serving cocktails and as sitting areas for customers waiting to be served their meals. Customers in these lounges were not required to buy drinks. Casual dress was acceptable at the Kapok. The restaurant honored various credit charge cards during the years in issue. Petitioner worked 5 hours a day, 4 days a week and in total worked 1,075.75 and 1,043.5 hours *187 in 1969 and 1970, respectively. For these services she received an hourly wage plus tips. Petitioner kept track of her tips on slips of paper, which she did not maintain, and these tips were later entered on her bi-weekly time card which was reported to her employer. The time card served as the basis for the Kapok's permanent records. Based on these records petitioner reported $718.23 and $651.24 in tips on her tax returns for 1969 and 1970, respectively. Petitioner generally worked alone in the Emerald Lounge which consisted of approximately 8-10 tables. On occasions when there was a co-worker tips were shared, but petitioner neither shared tips with the waitresses in the other areas, nor was she required to split tips with a hostess or busboys. She was an experienced and competent waitress during the years in issue. Petitioners on their 1969 and 1970 tax returns claimed a charitable contribution deduction of $75 and $90, respectively, for the contributions of used personal property to Goodwill Industries, including a washing machine, television, refrigerator and clothes. In his deficiency notice respondent determined that petitioner's tip income amounted to $2,043.93 and *188 $2,306.14 for 1969 and 1970, respectively. This determination was made after the application of a formula based upon respondent's review of Kapok's books and records. Respondent first determined the Kapok's net food and beverage sales and to it applied a 12 percent average tip factor to determine a figure for total possible tips. This figure was then divided by the total hours worked by all waitresses to determine a figure for average tips per hour. This figure was then multiplied by the actual hours worked by petitioner to determine her tip income. This procedure was used for both 1969 and 1970. The net food and beverage sales at tables for 1969 and 1970 were $3,104,178.66 and $3,668,174.26, respectively, and the total waitress hours for 1969 and 1970 were 203,807.5 and 206,887.25, respectively. Respondent subsequently reduced the average tip factor to 10-3/4 percent and consequently reduced the claimed tip income to $1,764.23 and $1,993.09 for 1969 and 1970, respectively. Respondent disallowed the claimed charitable contribution deduction determining that the petitioners had not adequately established that they in fact were made. OPINION The case at bar requires us to *189 determine for the taxable years 1969 and 1970 whether respondent's use of the formula, as described in the findings of fact, reasonably reflects the amount of tips received by petitioner as a cocktail waitress at the Kapok, whether petitioners contributed various items of personal property to Goodwill Industries, thereby entitling them to a charitable contribution deduction under section 170, and whether petitioners are subject to the imposition of the 5 percent penalty for negligence or intentional disregard of rules and regulations as provided by section 6653(a). During the years in issue petitioner was employed as a cocktail waitress at the Kapok. For these services she received an hourly wage plus tips. It is clear that tips are includable in gross income under section 61(a). Petitioner claimed that she kept daily detailed records of her tip income which was reported to her employer. However, no such records were made available for inspection by the examining revenue agents or this Court. After reviewing her method of accounting and reporting tips, we believe that she has not complied with the obligations imposed by section 6001, and that the respondent was entitled to reconstruct *190 her tip income for 1969 and 1970. Barry Meneguzzo,43 T.C. 824 (1965). Under section 446(b) the respondent has broad power to choose and employ a method to reconstruct income where the taxpayer's procedures are inadequate. The method used by the respondent in the instant case has been used and approved previously and we believe, with some modification, it can be properly applied to the circumstances at hand. Mendelson v. Commissioner,305 F. 2d 519 (7th Cir. 1962), affirming a Memorandum Opinion of this Court, cert. denied 371 U.S. 877 (1962). His method has the presumption of correctness and the petitioners have the burden of proving it wrong. Welch v. Helvering,290 U.S. 111 (1933). Although the respondent, through his income reconstruction method, need not prove every dollar of omitted tips, it must reflect the circumstances of an average waitress within the group covered. Mendelson v. Commissioner,supra. We believe that the petitioners have, at trial, pointed out some weaknesses in respondent's method causing us to modify respondent's figures. Respondent's starting point is the calculation *191 of net food and beverage sales made at the Kapok during each year. To this figure an average tip factor of 10-3/4 percent was applied to arrive at a figure for total possible tips. At trial respondent conceded that the net sales figure was not broken down on a room-by-room basis. The record reveals that the restaurant consisted of several separate rooms and that petitioner worked solely in one in which she served only drinks. This room was also used as an area for people to wait until they could be seated in the dining room. Those waiting did not always order cocktails. Consequently her area would not have as much activity as other areas. Additionally, although she pooled tips with a co-worker when there was one, she did not share in the tips received by the other waitresses in the other rooms. After arriving at a figure for total possible tips respondent divided that by total hours worked by all waitresses to arrive at an average figure for tips per hour. Respondent then multiplied this figure by the total hours worked by petitioner to determine the amount of tips received by her for each year. While the record is by no means clear on this point, it appears that the total hours *192 worked by bartenders who also received tips, were not included while their sales may have been. If those hours of bartenders had been included the resulting figure for average tips per hour would obviously be decreased and the resulting figure for petitioner's tips would also be lower. It does not appear that respondent's calculations reflect the above considerations. Although we generally approve of respondent's method, we do not believe it would have been burdensome for respondent to adjust his calculations to reflect petitioner's individual situation. After a careful review of the evidence in the record we believe that respondent should reconstruct petitioner's tip income for each year using the same method but inserting an 8 percent average tip factor in lieu of the 10-3/4 percent average tip used to determine the deficiencies now in issue. Petitioners, on their tax returns for 1969 and 1970, claimed charitable contribution deductions of $75 and $90, respectively. The deductions are based on contributions of used personal property to Goodwill Industries, including a washing machine, television, refrigerator, and clothes. At the trial petitioners testified that these contributions *193 were made and they placed a fair market value on each item which we believe was reasonable in each case. This testimony satisfies us that petitioners are entitled to the charitable contribution deduction pursuant to section 170 as originally claimed. Finally, respondent has determined that for both 1969 and 1970 petitioners are liable for the penalty imposed by section 6653(a). This penalty is imposed if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations". The burden of proof is on the petitioner. Robert L. Bunnel,50 T.C. 837, 843 (1968). As discussed previously we determined that petitioners' accounting and reporting procedures were inadequate to meet the standards imposed by section 6001. Their failure to maintain adequate records is the cause of their underpayment of federal income taxes. Accordingly we hold that respondent's imposition of the penalty is appropriate. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended unless otherwise indicated.↩