EDWARD J. PRESCOTT AND WANDA D. PRESCOTT, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3141-73.    Filed April 21, 1976.

*A. H. Michals,* for the petitioners.
*David J. Duez* and *Jay B. Kelly,* for the respondent.

IRWIN, *Judge:* Respondent has determined a deficiency in petitioners' Federal income tax for the calendar year 1969 in the amount of $108,051.78, plus an addition to tax under section 6653(a)[1] of $5,402.59. Various concessions having been made, the issues remaining for our decision are whether the termination of section 1361 status pursuant to section 1361(n)(2) should be treated as a corporate liquidation under section 331, whether any portion of the gain on such liquidation (if found to exist) is exempt from taxation, and whether the section 6653(a) penalty is applicable.

### FINDINGS OF FACT

Most of the facts have been stipulated and, as amended and supplemented, are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Edward J. Prescott and Wanda D. Prescott, husband and wife, resided in Minnetonka, Minn., at the time of filing the petition in the present case. Wanda D. Prescott is a

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended for the years in issue, unless otherwise provided.

party to this proceeding solely by virtue of having filed a joint Federal income tax return with her husband for the calendar year 1969 with the District Director of Internal Revenue in Kansas City, Mo. Accordingly, the designation "petitioner" will hereafter only refer to Edward J. Prescott.

Petitioner has been doing business since 1932 as a registered securities dealer in Minnesota. His business involves the buying and selling of State and municipal bonds, the interest on which is exempt from Federal income tax under present law.

For all the years relevant to this litigation, petitioner has conducted his business as a sole proprietorship under the name of E. J. Prescott & Co.

Beginning with the taxable year 1954, petitioner properly elected to have his business taxed as a corporation under section 1361 of the Internal Revenue Code of 1954, as in effect at that time. Federal corporate income tax returns (Form 1120) were filed by E. J. Prescott, d.b.a. E. J. Prescott & Co., for the taxable years 1954 through 1968. No Federal corporate income tax return was filed for the taxable year 1969. By letter dated March 7, 1969, and attached to the corporate income tax return for the year 1968, petitioner informed the Internal Revenue Service that 1968 was the last year his business could report its income as a corporation.

The parties have agreed that the basis of petitioner's investment in his "section 1361 corporation" as of January 1, 1954, was $330,922.36.

In the course of his business, petitioner made numerous loans from banks to enable him to carry tax-exempt securities for the years 1954 through 1968. No deductions for income tax purposes were taken by petitioner for the interest paid on such loans.

Petitioner has never filed or caused to be filed documents with the State of Minnesota to do business as a Minnesota corporation. He has at all times represented himself to the business community as a sole proprietor, doing business under the trade name of E. J. Prescott & Co.

On January 1, 1969, the assets (at fair market value) and liabilities of E. J. Prescott & Co., were as follows:

Assets:

| | |
|---|---|
| Bonds | $1,315,100.40 |
| Contracts | 6,800.00 |
| Real estate | 40,790.93 |

| | |
|---|---|
| Furniture and fixtures (net)_____ | $4,353.55 |
| Earnest money deposits_____ | 27,550.00 |
| B. coupons (net)_____ | 86,565.02 |
| Total _____ | 1,481,159.90 |

Liabilities:

| | |
|---|---|
| Loan payable _____ | 68,191.36 |
| Notes payable (bank) _____ | 630,000.00 |
| Due customers_____ | 123,175.70 |
| Bank overdraft_____ | 106,759.06 |
| Income tax payable: | |
| Federal _____ | 14,922.24 |
| State _____ | 4,557.49 |
| Total _____ | 947,605.85 |
| Net fair market value of assets _____ | 533,554.05 |

On January 1, 1969, by operation of law, petitioner's business ceased to be taxed as a section 1361 corporation. The parties have agreed that in the event we decide the termination of the status of petitioner's business as a section 1361 corporation should be treated as a liquidation of a corporation, petitioner received, in addition to the gain taxable on liquidation, ordinary income from the sale of bond inventory in the amount of $12,330.35 for the taxable year 1969. However, should we decide there was no corporate liquidation upon termination of 1361 status, then there will be no such additional ordinary income.

## OPINION

The issues remaining for our decision are whether the termination of the section 1361(a)[2] election by the operation of

---

[2] Sec. 1361:

(a) GENERAL RULE.—Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his delegate, not later than 60 days after the close of any taxable year of a proprietorship or partnership owning an unincorporated business enterprise, by the proprietor or all the partners, owning an interest in such enterprise at any time on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years. No election (other than an election referred to in subsection (f)) may be made under this subsection after the date of enactment of this sentence. [Apr. 14, 1966.]

Subch. R (sec. 1361) was enacted into law in 1954 as part of the Internal Revenue Code of 1954. On Apr. 14, 1966, Congress amended and repealed sec. 1361, such repeal to be effective as of Jan. 1, 1969. Pub.L. 89-389, 89th Cong., 2d Sess., sec. 4.

section 1361(n)(2) [3] has the effect of a corporate liquidation of petitioner's business; whether part of the gain on such liquidation, if it is found to exist, is tax exempt by virtue of the character of the assets of the proprietorship; and whether the negligence penalty under section 6653(a) is applicable.

Petitioner makes several contentions regarding the termination of his subchapter R status under section 1361(n)(2). First, he claims there was no liquidation of a corporation here because there was never any corporation to liquidate. Further, he points out that the statute itself is silent on the question of whether such termination is a taxable transaction. He claims imposition of a liquidation tax here would defeat the congressional intent to help small unincorporated businesses compete with larger corporate enterprises through equating the tax burden of each. The effect would be to "penalize" a taxpayer who has been lured into this web of tax benefits (only to be stung at the end of the line when the benefits are taken from him by subsequent, unforeseen legislation and regulations). Finally, he argues section 1.1361-16(b), Income Tax Regs., is inconsistent with congressional policy to benefit taxpayers and is, therefore, invalid. He says that what was involved here was a purely formal readjustment of business operations, that no actual change in business operations occurred, and that, therefore, no tax consequences ought to result on the termination of his section 1361(a) election.

Respondent contends that the legislative history behind section 1361(n)(2), which provides for termination of subchapter R status on January 1, 1969, indicates that Congress did indeed intend there to be a constructive liquidation of the pseudocorporation on such termination, and that if taxpayers wished to avoid a tax, they would have to incorporate under the

---

[3] Sec. 1361:

(n) REVOCATION AND TERMINATION OF ELECTIONS.—

(1) REVOCATION.—An election under subsection (a) with respect to an unincorporated business enterprise may be revoked after the date of the enactment of this subsection [Apr. 14, 1966] by the proprietor of such enterprise or by all the partners owning an interest in such enterprise on the date on which the revocation is made. Such enterprise shall not be considered a domestic corporation for any period on or after the effective date of such revocation. A revocation under this paragraph shall be made in such manner as the Secretary or his delegate may prescribe by regulations.

(2) TERMINATION.—If a revocation under paragraph (1) of an election under subsection (a) with respect to any unincorporated business enterprise is not effective on or before December 31, 1968, such election shall terminate on January 1, 1969, and such enterprise shall not be considered a domestic corporation for any period on or after January 1, 1969.

corporate organization and reorganization provisions of the Code (secs. 351 through 374). Respondent argues that section 1.1361-16(b), Income Tax Regs., is consistent with congressional policy and should be followed.

Section 1361(a) provides that the owner of a qualifying proprietorship or all the partners in a qualifying partnership may elect to have their business taxed as a domestic corporation for Federal income tax purposes. Subsection (b) of section 1361 sets forth the qualifications required of the business enterprise to elect to be taxed as a corporation and is not in issue here.

The election does not mean that the proprietorship will just be subject to corporate tax rates and otherwise be treated as a proprietorship for Federal income tax purposes. Rather, the impact of such an election is much broader. Section 1361(c) provides:

Under regulations prescribed by the Secretary or his delegate, an unincorporated business enterprise as to which an election has been made under subsection (a), *shall be considered a corporation for purposes of this subtitle*, except chapter 2 thereof, with respect to operation, distributions, sale of an interest, *and any other purpose*; and each owner of an interest in such enterprise shall be considered a shareholder thereof in proportion to his interest. [Emphasis supplied.]

Clearly, the business enterprise, when the election is in effect, is treated as a corporation for many purposes. This is particularly true for distributions from the business. Section 1361(k) provides that distributions other than in liquidation of the business enterprise shall be treated generally as corporate distributions under sections 301 through 318. Distributions in liquidation of the business enterprise are treated under section 1361(1) as distributions in a corporate liquidation under sections 331 through 346.

Once an election has been made under section 1361(a), the election is generally irrevocable for all subsequent taxable years. See sec. 1361(e). As originally enacted, there was but one exception to this rule and that was provided by section 1361(f) where there was a change of ownership of 20 percent or more in the business enterprise. The exception is not applicable here. A second exception was provided by Congress on April 14, 1966, by Pub.L. 89-389 which is of much importance here. That was enacted as section 1361(n) and was a part of the death blow Congress dealt to the utilization of section 1361(a) by

unincorporated taxpayers. As of its effective date, April 14, 1966, Pub.L. 89-389 prohibited any more elections under section 1361(a) (with one exception not relevant here), and, as to those elections then in effect, taxpayers had until December 31, 1968, to revoke the section 1361(a) election, or such election would terminate by operation of law on January 1, 1969.[4]

This was the situation in which petitioner found himself. He chose not to revoke his section 1361(a) election at any time and, consequently, it terminated on January 1, 1969, pursuant to section 1361(n)(2). The statute, however, does not expressly state what consequences are to flow from termination of a section 1361(a) election.

The Commissioner has general authority under section 7805 to promulgate regulations pursuant to income tax laws enacted by Congress. Pursuant to this authority, and the authority specifically granted in sections 1361(c) and 1361(n)(1), the Commissioner promulgated section 1.1361-16(b), Income Tax Regs., which provides:

If any election under section 1361(a) with respect to an unincorporated business enterprise would be effective on January 1, 1969, without regard to paragraph (2) of section 1361(n) and the provisions of this paragraph, such election shall terminate on January 1, 1969. The section 1361 corporation and its owners shall be treated as if the corporation had distributed its assets in a complete liquidation on January 1, 1969. The effect of the liquidation on the owners shall be determined under the provisions of sections 331 and 334(a). * * *

The effect of this regulation is to treat the business enterprise as having distributed all its assets in a complete corporate liquidation, with the business thereafter being conducted in unincorporated form by its former shareholders.

Petitioner contests the validity of this regulation as being against the congressional policy behind section 1361 to aid small unincorporated businesses competing with larger corporate businesses. He has failed to provide us, however, with any legislative history indicating that Congress did not intend there to be a taxable event upon termination of a section 1361(a) election

---

[4] While the statute itself only refers to two exceptions, there is a third exception provided by case law and respondent's regulations when the proprietorship or partnership actually incorporates under State law. *Estate of Willett v. Commissioner*, 365 F.2d 760 (5th Cir. 1966), revg. a Memorandum Opinion of this Court; *Estate of David Wein*, 40 T.C. 454 (1963), affd. per curiam 330 F.2d 957 (3d Cir. 1964); sec. 1.1361-5(b)(1), Income Tax Regs. Although this exception to irrevocability is not applicable here, petitioner has drawn an analogy between the consequences flowing from termination in this situation and his own. The propriety of this analogy will be discussed below.

under section 1361(n)(2). Respondent, on the other hand, has provided us with several excerpts from the Senate Finance Committee Report dealing with the 1966 amendments to subchapter R, which we find persuasive on this issue.

Initially, we note that while the 89th Congress was obviously not the same Congress which enacted section 1361 into law, it was the Congress that amended and repealed the statute. Since it is those amendments with which we are dealing here, we feel the intent of the 89th Congress, in repealing the statute, is controlling.

As originally submitted to the House of Representatives, H.R. 9883, 89th Cong., 2d Sess. (1966), contained no reference to subchapter R. It was the Senate Finance Committee which proposed the repeal of subchapter R and, accordingly, amended H.R. 9883 to so provide. S.Rept. No. 1007, 89th Cong., 2d Sess. 10 (1966). H.R. 9883, as amended, became Pub.L. 89-389 on April 14, 1966. In its report, the Senate Finance Committee stated the intended consequences of termination of a section 1361(a) election under the proposed repeal provisions:

In view of your committee's amendment repealing * * * [sec. 1361] effective January 1, 1969, your committee sees no reason why an unincorporated business which has made an election to be taxed like a corporation should be required to remain in that status until that date, whether or not the owners of the business desire to form an actual corporation to continue the business. Accordingly, your committee has included an amendment to permit an election to be revoked on or before December 31, 1968. If an election is not revoked on or before this date, it will terminate on January 1, 1969. The revocation or termination of an election (without any transfer to an actual corporation) under your committee's amendment will be treated, for Federal income tax purposes, *as a complete liquidation of a corporation.* [S. Rept. No. 1007, *supra* at 10. Emphasis supplied.]

In this same report the committee reiterates its intended treatment upon termination of a section 1361 election in the "Technical Explanation" portion of its report:

Paragraph (1) of new section 1361(n) provides that an election under section 1361(a) with respect to an unincorporated business enterprise may be revoked after the date of the enactment of the bill by the proprietor of such enterprise or by all of the partners owning an interest in such enterprise on the date on which the revocation is made. The revocation shall be made in such manner as the Secretary of the Treasury or his delegate may prescribe by regulations. The revocation will be effective on the date on which it is made unless the revocation specifies a later effective date and such enterprise shall not be considered a domestic corporation for any period on or after the effective date of

the revocation. *The section 1361 corporation and its owners shall be treated as if the corporation had distributed its assets in a complete liquidation on the effective date of the revocation,* unless such treatment is inappropriate because of the applicability of provisions of the code relating to corporate organizations and reorganizations. Such applicability can result, for example, from a subsequent transfer of assets to an actual corporation.

Paragraph (2) of new section 1361(n) provides that if a revocation under paragraph (1) of an election under section 1361(a) with respect to any unincorporated business enterprise is not effective on or before December 31, 1968, such election shall terminate on January 1, 1969, and such enterprise shall not be considered a domestic corporation for any period on or after January 1, 1969. Of course, if an election with respect to an enterprise terminates on or before December 31, 1968, as a result of the provisions of section 1361(f), and another election under section 1361(a) with respect to such enterprise is not made on or before such date, section 1361(n) is not applicable to such enterprise. *If an election is terminated under the provisions of paragraph (2) of new section 1361(n), the section 1361 corporation and its owners shall be treated in the same manner as if a revocation had been made under paragraph (1) of section 1361(n), effective on January 1, 1969.*

[S. Rept. No. 1007, *supra* at 22. Emphasis supplied.]

In light of this clear expression of legislative intent, we feel constrained to hold that on the termination of petitioner's section 1361(a) election by operation of law on January 1, 1969, petitioner is deemed to have received all the assets of his business enterprise in a complete *corporate* liquidation pursuant to sections 331, et seq., of the Internal Revenue Code of 1954. Respondent's regulation, section 1.1361-16(b), is eminently reasonable and consistent with the legislative intent expressed by the Senate Finance Committee.

Both parties agree that this is a case of first impression. Petitioner has drawn our attention to several cases dealing with the termination of a section 1361(a) election upon the actual incorporation, under State law, of the business enterprise subject to the election.[5] These cases deal with the validity of section 1.1361-5(b), Income Tax Regs., which provides that on the actual incorporation of a business enterprise, prior to April 15, 1966, the election terminates and the assets of the "section 1361 corporation" are deemed distributed to the owners thereof in a complete corporate liquidation. The Courts of Appeals have split on the validity of this regulation. The Third Circuit has held the regulation valid. *Estate of Wein v. Commissioner,* 330 F.2d 957

---

[5] *Estate of Willett v. Commissioner, supra; Estate of David Wein, supra.* See also *Mathis v. United States,* 430 F.2d 158 (7th Cir. 1970); *Higgins v. United States,* 281 F.Supp. 913 (D. Mass. 1968).

(3d Cir. 1964), affg. 40 T.C. 454 (1963). The Fifth Circuit, reversing one of our decisions, has ruled the regulation invalid as contrary to the congressional intent behind section 1361 to benefit small unincorporated businesses competing with larger corporate businesses. *Estate of Willett v. Commissioner,* 365 F.2d 760 (5th Cir. 1966), revg. a Memorandum Opinion of this Court. The Seventh Circuit has followed the decision of the Fifth Circuit, *Mathis v. United States,* 430 F.2d 158 (7th Cir. 1970); as has the District Court in Massachusetts, *Higgins v. United States,* 281 F.Supp. 913 (D. Mass. 1968).

One of the problems sought to be avoided by the regulations (both secs. 1.1361-5(b) and 1.1361-16(b)) arises when income is accumulated in a section 1361 corporation at corporate tax rates (which presumably would be lower than the individual rates otherwise applicable or else no election would be filed). If we allow a taxpayer to take this accumulated income out of the section 1361 corporation on termination of the election without any additional tax burden, we would give him benefits that are not available to either an actual corporation or a proprietorship (which would be taxed at the higher individual rates initially).

We do not think Congress intended to enable petitioner to get accumulated earnings out of his section 1361 corporation without any additional tax consequences. Had these earnings been distributed to him while the election was in effect, section 1361(k) would have treated the distribution as a corporate distribution pursuant to sections 301 through 318 of the Code. Further, had the proprietorship itself actually liquidated while the election was in effect, section 1361(b) would have treated such liquidation as a corporate liquidation pursuant to sections 331 through 346 of the Code.

Where a proprietorship actually incorporates (thereby terminating the election), the problem mentioned does not arise, as the owner of the business enterprise will only gain access to the accumulated earnings through an actual corporate distribution (under sec. 301 or sec. 331) and will be taxed accordingly at that time. This was the situation involved in the cases cited to us by petitioner. The Fifth and Seventh Circuits felt that where there was an actual incorporation, there was no need to impose an additional tax on a constructive liquidation of the section 1361 corporation, and to do so would violate the congressional intent to benefit smaller unincorporated businesses. However, our case

differs from these decisions and we think they are not controlling where, as here, the proprietorship continued to operate in unincorporated form after termination of the section 1361 election.

We realize that there are some inequities falling on the petitioner. On liquidation of the section 1361 corporation petitioner, in effect, is taxed on the appreciation in value of his business assets, as well as the accumulated business earnings. Arguably there was no event upon which *realization* of this appreciation in assets occurred. Sec. 1.1001-1(a), Income Tax Regs. Petitioner owned these assets prior to termination of his section 1361 election, and continued to own them after such termination. However, Congress has imposed liquidation status on the event here. As such, the termination of the section 1361 election is treated as an exchange of assets for stock under section 331. This, then, becomes the event upon which realization of income occurs. While there was no actual liquidation of petitioner's business, there was a liquidation for Federal income tax purposes upon which gain may be realized.

Petitioner's second argument is that even if there was a liquidation of his section 1361 corporation, a portion of his gain on liquidation should be exempt from tax because of the character of the assets deemed distributed to him. That is, the interest on his State and municipal bonds is tax exempt under section 103, and imposing a tax on this interest on liquidation, he argues, is in effect taxing his tax-exempt interest. He claims, first, that he has always owned the bonds in his individual capacity and no transfer has taken place; second, imposition of a tax on liquidation would result in multiple taxation of the same income; and third, a tax here would amount to a tax on the credit of the States and municipalities involved.[6]

Respondent counters that there is no "passthrough" of the exempt nature of the income to petitioner. Respondent feels the congressional intent in providing for a liquidation suggests that for Federal tax purposes the pseudocorporation is treated as "owning" the assets just prior to liquidation. As with an actual corporation, there is no passthrough to the shareholders of the tax-exempt character of income, and the entire gain on liquidation is taxable.

---

[6] The burden is on the petitioner to show that the facts of his case fit clearly within the exempting statute. *Lloyd v. Commissioner,* 154 F. 2d 643, 646 (3d Cir. 1946).

Addressing petitioner's first point regarding this issue, we hold that although no actual transfer of assets occurred on termination of the section 1361 election, Congress has imposed a constructive transfer between the section 1361 corporation and petitioner for Federal income tax purposes. We draw this conclusion from the liquidation status Congress imposed on the section 1361 corporation when termination of the election occurs under section 1361(n)(2).

Petitioner's second point, that of multiple taxation of the same income, is a bit confusing. Double taxation is one of the natural concomitants of operating in corporate form or, as here, subject to the section 1361 election. Income is generally taxed at the corporate level and then again on distribution or liquidation. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 1.03, p. 1-8 (3d ed.). This does not violate any statute that we know of, nor does petitioner so claim. He does claim that the bonds were tax exempt in the hands of his section 1361 corporation and should be tax exempt in his hands. While we think petitioner is semantically correct here, we are not sure he means the same thing we do when we say these bonds are tax exempt. It is only the interest on such bonds that is tax exempt under section 103. Interest accruing before liquidation is exempt income to the section 1361 corporation. Interest accruing after liquidation is exempt income to petitioner. Cf. *Helvering v. Horst,* 311 U.S. 112 (1940). Once accrued to the section 1361 corporation, such interest becomes merely a cash asset of the corporation to be distributed as a dividend or in liquidation. The proceeds received by petitioner in liquidation cannot be said to constitute interest on Government bonds within the meaning of section 103. "Interest" is compensation for the use of borrowed money. *Deputy v. duPont,* 308 U.S. 488, 498 (1940); *Old Colony R. Co. v. Commissioner,* 284 U.S. 552, 560 (1932); *Lloyd v. Commissioner,* 154 F. 2d 643, 646 (3d Cir. 1946). Petitioner is not being compensated for the use of borrowed money. Rather, the assets received in liquidation of his section 1361 corporation represent the return on petitioner's investment in such business enterprise. They are, therefore, not exempt from tax within the meaning of section 103.

A comparable situation involves corporate distributions under section 301 or section 1361(k). Interest on certain governmental obligations may be excluded from a corporation's income under

section 103. However, such interest is included in the computation of the corporation's earnings and profits. Sec. 1.312-6(b), Income Tax Regs.; *Henry C. Beck Co.,* 52 T.C. 1, 6 (1969), affd. 433 F. 2d 309 (5th Cir. 1970). Cf. Bittker & Eustice, *supra* at par. 7.03, p. 7-14. And it is the earnings and profits of the corporation that determine the taxability of distributions under section 301. See sec. 316(a). But this is not a tax on the "interest" on the governmental obligations. It is only a tax on the distribution of cash to the shareholders as a dividend. Sec. 1.312-6(b), Income Tax Regs.

Petitioner's third and final point is that a tax on liquidation here is in effect a tax on the credit of the State or municipality issuing the bonds. We think petitioner has again misconstrued the nature of an income tax on liquidation of a corporation. As stated above, the cash received does not represent "interest" in the sense that petitioner is being compensated for the use of borrowed money. Consequently, the tax imposed on such cash cannot be considered a tax on the State's power to borrow. Cf. *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 586 (1895). The Supreme Court in *Farmers' Loan & Trust Co.* held that a tax on the interest from municipal bonds was a tax on the power to borrow money on the credit of the States, and, therefore, repugnant to the Constitution. Subsequently, in distinguishing a tax on the power of States to borrow money from a tax on the transfer of municipal bonds, the Supreme Court said in *Willcuts v. Bunn,* 282 U.S. 216, 227 (1931):

it does not follow, because a tax on the interest payable on state and municipal bonds is a tax on the bonds and therefore forbidden, that Congress cannot impose a non-discriminatory excise tax upon the profits derived from the sale of such bonds. The sale of the bonds by their owners, after they have been issued by the State or municipality, is a transaction distinct from the contracts made by the government in the bonds themselves, and the profit on such sales are in a different category of income from that of the interest payable on the bonds. Because the tax in question is described as an "income tax" and the profits on sales are included in "income," the distinction is not lost between the nature of a tax applied to interest and that of a tax applied to gains from sales.

While the *Bunn* case dealt with the imposition of a tax on the transferor of municipal bonds and we are dealing with a tax on the transferee of such bonds, we cite it as being illustrative of the distinction between a tax on the interest from municipal bonds (i.e., a tax on the credit of the municipalities involved) and a tax on their transfer.

In the present case petitioner is deemed to have received the assets (including cash and municipal bonds) of his section 1361 corporation in liquidation. We cannot conclude that a tax imposed on the gain realized on such liquidation is a tax on the credit of the States and municipalities issuing the bonds, and, therefore, we reject petitioner's contention that any portion of the gain realized by him on termination of his section 1361 status is exempt from tax.

The final issue to be disposed of in this case involves the applicability of the addition to tax under section 6653(a). The petitioner has the burden of proving that he is not liable for such addition. *Peter Vaira,* 52 T.C. 986 (1969), revd. and remanded on other grounds 444 F. 2d 770 (3d Cir. 1971); *Robert L. Bunnel,* 50 T.C. 837 (1968), appeal dismissed nolle prosse (10th Cir. 1969); *David Courtney,* 28 T.C. 658 (1957).

Petitioner contends any deficiency in income tax was due to his good-faith misunderstanding of the law, and not his negligent or intentional disregard of rules and regulations. He says that section 1.1361-16(b), Income Tax Regs., is similar to section 1.1361-5(b), Income Tax Regs., and that the latter was declared invalid by several courts. His conclusion is that it was not unreasonable to presume that regulations section 1.1361-16(b) would meet with the same fate. Further, he argues these regulations are rather complex and that it is not the statute itself he is accused of disregarding, but only the regulation.

Respondent argues that petitioner has a history of sophistication in tax matters, that he knew full well of the enactment of legislation repealing subchapter R, and that he ignored the explicit wording of section 1.1361-16(b), Income Tax Regs., when filing his tax return for the calendar year 1969. Since petitioner bears the burden of proof on this issue, respondent concludes the 5-percent additional tax is appropriate.

There is virtually no evidence in the record of why petitioner did not comply with the express provisions of section 1.1361-16(b), Income Tax Regs. The evidence does indicate that petitioner knew his election under section 1361 had terminated by operation of law. We reach this conclusion from the fact that no corporate income tax returns were filed for the tax years beginning 1969, whereas corporate returns had been filed for the years 1954 through 1968. Further, a letter dated March 7, 1969, from petitioner to the Internal Revenue Service in Kansas City,

Mo., and attached to petitioner's corporate income tax return for 1968, stated 1968 was the last year in which his business would report its income as a corporation. The Commissioner's determination that some part of the underpayment for 1969 was due to negligence or intentional disregard of rules and regulations is presumptively correct. *James S. Reily,* 53 T.C. 8, 14 (1969). The absence of evidence (as opposed to mere arguments) on this issue falls adversely on the petitioner. We find that petitioner has failed to meet his burden of proof and is liable for the addition to tax under section 6653(a).

*Decision will be entered under Rule 155.*